**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| NEXTEIR COMPLETION SOLUTIONS INC. <br><br> Plaintiff / Counterclaim-Defendant, <br><br> v. <br><br> DYNAENERGETICS EUROPE GMBH, and DYNAENERGETICS US, INC., <br><br> Defendants / Counterclaim-Plaintiffs. | Civil Action No: 4:21-CV-1328 |

**DYNAENERGETICS EUROPE GMBH AND DYNAENERGETICS US, INC.'S
ANSWER TO COMPLAINT AND COUNTERCLAIMS**

Defendants DynaEnergetics US, Inc. ("DynaEnergetics US") and DynaEnergetics Europe GmbH ("DynaEnergetics Europe") (collectively "DynaEnergetics" or "Defendants"), by and through counsel, hereby respond to the numbered paragraphs of NexTier Completion Solutions Inc.'s ("NexTier" or "Plaintiff") Complaint for Declaratory Judgment.

**THE PARTIES**

1.      DynaEnergetics lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 1, and therefore denies the same.

2.      DynaEnergetics admits the allegations in Paragraph 2.

3.      DynaEnergetics admits the allegations in Paragraph 3.

**JURISDICTION AND VENUE**

4.      DynaEnergetics admits that NexTier's Complaint purports to state a claim for declaratory judgment that it does not infringe U.S. Patent No. 10,844,697 ("the '697 Patent") but denies that NexTier's claim has any merit.  DynaEnergetics admits that DynaEnergetics Europe is the owner of the '697 Patent.  DynaEnergetics denies the remaining allegations of

1

Paragraph 4.

5.      DynaEnergetics admits the allegations of Paragraph 5.

6.      DynaEnergetics admits that DynaEnergetics US' headquarters is located within this District.  DynaEnergetics US admits that the Court has personal jurisdiction but contends that this action should not proceed or should be transferred in light of the first-filed Western District of Texas action. *See* Dkt. 23.  Except as expressly admitted, DynaEnergetics denies the remaining allegations of Paragraph 6.

7.      DynaEnergetics admits that the Court has personal jurisdiction over DynaEnergetics Europe and that it is a plaintiff in other cases in this District, including Case Nos. 4:17-cv-3784, 4:20-cv-2123, 4:21-cv-00280 and 4:21-cv-00283, but contends that this action should not proceed or should be transferred in light of the first-filed Western District of Texas action. *See* Dkt. 23.  Except as expressly admitted, DynaEnergetics denies the remaining allegations of Paragraph 7.

8.      DynaEnergetics admits that venue is proper in this judicial district as to DynaEnergetics US, but contends that this action should not proceed or should be transferred in light of the first-filed Western District of Texas action. *See* Dkt. 23.  Except as expressly admitted, DynaEnergetics denies the remaining allegations of Paragraph 8.

9.      DynaEnergetics admits that venue is proper in this judicial district as to DynaEnergetics Europe, but contends that this action should not proceed or should be transferred in light of the first-filed Western District of Texas action. *See* Dkt. 23.  Except as expressly admitted, DynaEnergetics denies the remaining allegations of Paragraph 9.

## **BACKGROUND FACTS**

10.     DynaEnergetics admits that on September 11, 2020, Lisa Moyles, counsel for DynaEnergetics Europe, sent NexTier Oilfield Solutions Inc. a letter stating that

DynaEnergetics Europe was the owner of pending U.S. Patent Application 16/585,790, which later issued as the '697 Patent, and stating DynaEnergetics Europe's belief that its GameChanger system practiced technology encompassed by one or more of the patents or pending applications owned by DynaEnergetics Europe and stating DynaEnergetics Europe's intent to pursue all available legal remedies to the extent NexTier failed to cease its infringing activity. DynaEnergetics admits that Exhibit 1 attached to the Complaint (Dkt. 1-1) purports to be a copy of the September 11, 2020 letter sent from Ms. Moyles to NexTier Oilfield Solutions Inc., which speaks for itself. Except as expressly admitted, DynaEnergetics denies the remaining allegations of Paragraph 10.

11.     DynaEnergetics admits the allegations in Paragraph 11.

12.     DynaEnergetics lacks information sufficient to admit or deny the allegations in Paragraph 12 and therefore denies same.

13.     DynaEnergetics admits that a dispute exists as to whether Plaintiff's GameChanger system infringes the '697 Patent.   Except as expressly admitted, DynaEnergetics denies the remaining allegations of Paragraph 13.

14.     DynaEnergetics admits that Plaintiff's Complaint purports to state a claim for declaratory relief, but denies that Plaintiff's claim has any merit.   Except as expressly admitted, DynaEnergetics denies the remaining allegations of Paragraph 14.

### COUNT I: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,844,697

15.     DynaEnergetics restates and incorporates each of its responses in the preceding paragraphs as if fully stated herein.

16.     DynaEnergetics admits that DynaEnergetics Europe is the owner of the '697 Patent titled "Perforation Gun Components and System."   Except as expressly admitted, DynaEnergetics denies the remaining allegations of Paragraph 16.

17.     DynaEnergetics admits that DynaEnergetics US is the exclusive licensee of the '697 Patent.

18.     DynaEnergetics denies the allegations in Paragraph 18.

19.     DynaEnergetics denies the allegations in Paragraph 19.

20.     DynaEnergetics denies the allegations in Paragraph 20.

## COUNT II: DECLARATORY JUDGMENT THAT PRE-ISSUANCE DAMAGES ARE NOT AVAILABLE FOR U.S. PATENT NO. 10,844,697

21.     DynaEnergetics restates and incorporates each of its responses in the preceding paragraphs as if fully stated herein.

22.     DynaEnergetics admits that the '697 Patent issued on November 24, 2020 and that DynaEnergetics is entitled to pre-issuance damages for patent infringement under 35 U.S.C. § 154(d).   Except as expressly admitted, DynaEnergetics denies the remaining allegations of Paragraph 22.

23.     DynaEnergetics denies the allegations in Paragraph 23.

24.     DynaEnergetics denies the allegations in Paragraph 24.

25.     DynaEnergetics denies the allegations in Paragraph 25.

DynaEnergetics denies that NexTier is entitled to any of the requested relief.

## COUNTERCLAIMS

Defendants and Counterclaim-Plaintiffs DynaEnergetics US, Inc. ("DynaEnergetics US") and DynaEnergetics Europe GmbH ("DynaEnergetics Europe") (collectively "DynaEnergetics" or "Counterclaim-Plaintiffs"), by and through counsel, assert the following

counterclaims for patent infringement against Plaintiff and Counterclaim-Defendant NexTier Completion Solutions Inc. ("NexTier" or "Counterclaim-Defendant").[1]

## THE PARTIES

1.     Defendant and Counterclaim-Plaintiff DynaEnergetics Europe GmbH ("DynaEnergetics Europe") is a corporation organized under the laws of Germany, with its headquarters at Kaiserstrasse 3, 53840 Troisdorf, Germany.

2.     Defendant and Counterclaim-Plaintiff DynaEnergetics US, Inc. ("DynaEnergetics US") is a corporation organized under the laws of the State of Colorado, with its headquarters at 2050 W. Sam Houston Pkwy S., Suite 1750, Houston, TX 77042-3659.  DynaEnergetics US has a regular and established place of business within the Western District of Texas at 3580 HCR 1145 Loop North, Blum, TX 76627.

3.     Upon information and belief, Plaintiff and Counterclaim-Defendant NexTier Completion Solutions Inc. is a Delaware corporation with a registered address of 3990 Rogerdale Rd, Houston, Texas 77042-5142.  Plaintiff and Counterclaim-Defendant NexTier Completion Solutions Inc. may be served with process by serving its registered agent at C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201, or as otherwise authorized under applicable law.

## JURISDICTION AND VENUE

4.     This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271.

---

[1] This counterclaim for infringement is compulsory under Fed. R. Civ. P. 13(a). *See Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003). By bringing this compulsory counterclaim, DynaEnergetics does not waive its challenge to the most convenient and appropriate venue for this action, which DynaEnergetics contends is the Western District of Texas. *See* Dkt 23.

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, including 35 U.S.C. § 1 *et seq.*

6.     NexTier has consented to personal jurisdiction by commencing this action for declaratory judgment regarding patent infringement and validity in this judicial district, as set forth in NexTier's Complaint.

7.     NexTier has consented to venue in this District pursuant to at least 28 U.S.C. §§ 1391(b) and (c) and 1400(b).  However, as set forth in the concurrently filed Motion to Dismiss, Transfer, or Stay, this case substantially overlaps with an earlier-filed action in the Western District of Texas. *See* Dkt 23. That venue is further a more convenient and appropriate venue for adjudication of this dispute is the Western District of Texas, because, *inter alia*, the '697 Patent is being litigated in six other cases in the Western District of Texas, DynaEnergetics US's flagship location is in the Western District of Texas, NexTier has significant operations and a regular and established place of business in the Western District of Texas, NexTier's infringement of the '697 Patent is concentrated in the Western District of Texas, and third party witnesses are primarily located in the Western District of Texas.

## **FACTS**

### **A.  DynaEnergetics**

8.     DynaEnergetics is a leader in the field of well completion, perforating, well abandonment, and seismic technologies.  DynaEnergetics has a long history of technological innovation, including innovation in the manufacture of detonators, detonating cords, and perforating hardware.

9.     In connection with its research and development efforts, DynaEnergetics has developed groundbreaking inventions for a wireless detonator assembly, a pre-wired perforating

gun assembly, and methods of assembling the pre-wired perforating gun assembly.  These inventions are currently protected by multiple United States patents, including U.S. Patent No. 10,844,697 (the "'697 Patent").

10.    The '697 Patent, entitled "PERFORATION GUN COMPONENTS AND SYSTEM," was duly and legally issued on November 24, 2020 to DynaEnergetics Europe GmbH. A true and accurate copy of the '697 Patent is attached hereto and incorporated herein by reference as Exhibit A.

11.    DynaEnergetics makes, distributes, offers to sell, and sells perforating gun systems that practice the '697 Patent.  DynaEnergetics Europe exclusively licenses DynaEnergetics US to make, distribute, offer to sell, and sell perforating gun systems that practice the '697 Patent in the United States.  DynaEnergetics has marked the covered products in accordance with 35 U.S.C. § 287.

12.    Counterclaim-Defendant is a competitor of DynaEnergetics, including in the field of perforating systems through the manufacture, use, and/or sale of its own systems as well as the manufacturing, use, and/or sale of perforating systems licensed or purchased from other manufacturers.

**B.  GameChanger**

13.    Counterclaim-Defendant has, upon information and belief, either alone or in concert, manufactured, used, distributed, sold, or offered to sell the GameChanger in the United States, including within the State of Texas and within this District. *See DynaEnergetics Europe GmbH et.al. v. NexTier Completion Sol'ns Inc.*, No. 6:20-cv-01201, Dkt. 22-1 ¶¶ 11-12.

14.    Counterclaim-Defendant describes and provides photos of the GameChanger on the website   of   its   corporate   parent,   NOS,   at   https://nextierofs.com/solutions/innovative-

7

solutions/gamechanger. A copy of the NOS's website advertising the GameChanger and the corresponding photos (as accessed on December 30, 2020) is attached hereto and incorporated herein by reference as Exhibit B.

15.     Through the NOS website, Counterclaim-Defendant also provides downloadable PDFs containing specifications for the GameChanger. A copy of the Counterclaim-Defendant's downloadable PDF specifications for the GameChanger (as downloaded on December 30, 2020) is attached hereto and incorporated herein by reference as Exhibit C.

16.     The GameChanger infringes one or more claims of the '697 Patent, including at least each and every element of Claim 1 either literally or equivalently, as set forth below.

17.     Claim 1 of the '697 Patent recites:

1. An electrical connection assembly for establishing an electrical connection in a tool string, the electrical connection assembly comprising:

a tandem seal adapter having a first end, a second end and a bore that extends from the first end to the second end and entirely through the tandem seal adapter;

a perforation gun system comprising a first outer gun carrier, a shaped charge, and a first detonator, wherein the shaped charge and the first detonator are positioned within the first outer gun carrier, wherein the first outer gun carrier is connected to the first end of the tandem seal adapter; and

a pressure bulkhead having an outer surface, a first end and a second end, the outer surface of the pressure bulkhead is sealing received in the bore of the tandem seal adapter, the pressure bulkhead also having a pin connector assembly extending through the pressure bulkhead from a first pin connector end to a

second pin connector end, and configured to relay an electrical signal from the first end of the pressure bulkhead to the second end of the pressure bulkhead, wherein the first pin connector end extends beyond the first end of the pressure bulkhead and the second pin connector end extends beyond the second end of the pressure bulkhead, wherein

the first detonator is in electrical communication with the pin connector assembly, wherein the tandem seal adapter and the pressure bulkhead are configured to provide a seal between the detonator and an environment on the second end of the tandem seal adapter.

18.     The GameChanger either literally or equivalently contains an electrical connection assembly for establishing an electrical connection in a tool string. This is evidenced by the description of the GameChanger in Exhibit B stating that GameChanger's "[s]pring-loaded connectors provide automatic, solid contact between guns and subs" and its "[p]lug-and-play connections and easy arming remove pinch points that can cause firing failures" and that the benefits of the GameChanger mention the "[l]ack of wires between guns and subs provides additional protection against pinched wires."

19.     The electrical connection assembly in the GameChanger either literally or equivalently comprises a tandem seal adapter having a first end, a second end and a bore that extends from the first end to the second end and entirely through the tandem seal adapter. An example of this is shown in the below annotated photo of the GameChanger.



20.     The electrical connection assembly in the GameChanger either literally or equivalently comprises a perforation gun system comprising a first outer gun carrier, a shaped charge, and a first detonator, wherein the shaped charge and the first detonator are positioned within the first outer gun carrier, wherein the first outer gun carrier is connected to the first end of the tandem seal adapter. An example of this is shown in the below annotated photos of the GameChanger.





21.     The electrical connection assembly in the GameChanger either literally or equivalently comprises a pressure bulkhead having an outer surface, a first end and a second end,

the outer surface of the pressure bulkhead is sealing received in the bore of the tandem seal adapter, the pressure bulkhead also having a pin connector assembly extending through the pressure bulkhead from a first pin connector end to a second pin connector end, and configured to relay an electrical signal from the first end of the pressure bulkhead to the second end of the pressure bulkhead, wherein the first pin connector end extends beyond the first end of the pressure bulkhead and the second pin connector end extends beyond the second end of the pressure bulkhead.  This is evidenced by the description of the GameChanger in Exhibit B stating that GameChanger's "[s]pring-loaded connectors provide automatic, solid contact between guns and subs" and its "[p]lug-and-play connections and easy arming remove pinch points that can cause firing failures" and that the benefits of the GameChanger mention the "[l]ack of wires between guns and subs provides additional protection against pinched wires." Further, an example of this is shown in the below annotated photo of the GameChanger.



22.    The electrical connection assembly in the GameChanger either literally or equivalently comprises the first detonator being in electrical communication with the pin connector assembly, wherein the tandem seal adapter and the pressure bulkhead are configured to provide a seal between the detonator and an environment on the second end of the tandem seal adapter.  This is evidenced by the description of the GameChanger in Exhibit B stating that GameChanger's "[s]pring-loaded connectors provide automatic, solid contact between guns and subs" and its "[p]lug-and-play connections and easy arming remove pinch points that can cause firing failures" and that the benefits of the GameChanger mention the "[l]ack of wires between guns and subs

provides additional protection against pinched wires." Further, an example of this is shown in the below annotated photo of the GameChanger.



### C. Thunder Gun, PerfAlign, and PerfStorm

23.     Upon information and belief, Counterclaim-Defendant has, either alone or in concert, manufactured, used, distributed, sold, or offered to sell the "Thunder Disposable Gun System" (hereinafter referred to as "Thunder Gun"), the PerfAlign Self-Orienting Gun System (hereinafter referred to as "PerfAlign"), and/or the PerfStorm Prewired Disposable Gun System (hereinafter referred to as "PerfStorm") purchased or licensed from SWM International, LLC (hereinafter "SWM") and continues to do so in the United States, including within the State of Texas and within this District.

24.     SWM previously described its manufacture of perforating guns on its website at http://www.swmtx.com/about_swm.html. A copy of the SWM's website (as accessed on January 27, 2021) is attached hereto and incorporated herein by reference as Exhibit D.

25.     SWM also previously advertised its perforating gun products, including the Thunder Gun, on its website, including providing a downloadable PDF containing specifications for the Thunder Gun. A copy of SWM's downloadable PDF specifications for the Thunder Gun (as downloaded from http://www.swmtx.com/pdf/thunder_gun.pdf on January 27, 2021) is attached hereto and incorporated herein by reference as Exhibit E.

12

26.     Upon information and belief, at least as early as January 23, 2021, in response to infringement allegations brought against it by DynaEnergetics in a separate pending action entitled *DynaEnergetics Europe GmbH et al v. SWM International, LLC*, Civil Action No. 3:21-CV-192-M (N.D. Tex.), SWM removed the webpages and product specifications regarding the Thunder Gun from its primary website.  However, SWM has created a separate webpage that continues to provide information regarding both Thunder Gun and PerfAlign.  A copy of SWM's new Thunder Gun page (as downloaded from http://34.202.175.22/tags/ on April 21, 2021) is attached hereto and incorporated herein by reference as Exhibit F.  A copy of SWM's new PerfAlign page (as downloaded from http://34.202.175.22/perfalign/ on April 21, 2021) is attached hereto and incorporated herein by reference as Exhibit G. A copy of SWM's new PerfStorm page (as downloaded from http://34.202.175.22/perfstorm/ on April 21, 2021) is attached hereto and incorporated herein by reference as Exhibit H.

27.     The Thunder Gun infringes one or more claims of the '697 Patent, including at least each and every element of Claim 1 either literally or equivalently, as set forth below.

28.     The Thunder Gun either literally or equivalently contains an electrical connection assembly for establishing an electrical connection in a tool string. This is evidenced by the description of the Thunder Gun in Exhibit E stating that the Thunder Gun has a "Pre-wired Pin-Box Gun . . . for quicker installation," a "Single Style Feed-Thru for simplified connections," and that the Thunder Gun is "Pre-wired w/ double insulated wire." An example of this is also shown in the below photos of the Thunder Gun.







29.     The electrical connection assembly in the Thunder Gun either literally or equivalently comprises a tandem seal adapter having a first end, a second end and a bore that extends from the first end to the second end and entirely through the tandem seal adapter. An example of this is shown in the below annotated photo of the Thunder Gun.



30.     The electrical connection assembly in the Thunder Gun either literally or equivalently comprises a perforation gun system comprising a first outer gun carrier, a shaped charge, and a first detonator, wherein the shaped charge and the first detonator are positioned within the first outer gun carrier, wherein the first outer gun carrier is connected to the first end of

the tandem seal adapter. This is evidenced in the below annotated photos of the Thunder Gun, which shows the Thunder Gun outer gun carrier, an assembly including a carrier for housing a shaped charge (not shown) and a first detonator (not shown). The Thunder Gun assembly is positioned within the outer gun carrier, wherein the outer gun carrier is connected to the first end of the tandem seal adapter.



31. The electrical connection assembly in the Thunder Gun either literally or equivalently comprises a pressure bulkhead having an outer surface, a first end and a second end, the outer surface of the pressure bulkhead is sealing received in the bore of the tandem seal adapter, the pressure bulkhead also having a pin connector assembly extending through the pressure bulkhead from a first pin connector end to a second pin connector end, and configured to relay an electrical signal from the first end of the pressure bulkhead to the second end of the pressure bulkhead, wherein the first pin connector end extends beyond the first end of the pressure bulkhead and the second pin connector end extends beyond the second end of the pressure bulkhead. This is

evidenced by the description of the Thunder Gun in Exhibit E stating that the Thunder Gun uses a "Single Style Feed-Thru for simplified connections." An example of this is shown in the below annotated photos from of the Thunder Gun.







32.     The electrical connection assembly in the Thunder Gun either literally or equivalently comprises the first detonator being in electrical communication with the pin connector assembly, wherein the tandem seal adapter and the pressure bulkhead are configured to provide a seal between the detonator and an environment on the second end of the tandem seal adapter. This is evidenced by the description of the Thunder Gun in Exhibit E stating that the Thunder Gun "Can be used with any brand of Addressable Switches & Detonators" and that the "Contact End Fittings" are "Pre-wired w/ double insulated wire" and "Used with Addressable Switch only." An example of this is also shown in the below annotated photos of the Thunder Gun.





33.     Like SWM's Thunder Gun, SWM's PerfAlign and PerfStorm systems are pre-wired perforating guns that incorporate wire-free connections and feedthroughs including a bulkhead positioned within the tandem seal adapter.  Thus, for the same reasons as Thunder Gun,

the PerfAlign and PerfStorm systems infringe one or more claims of the '697 Patent, including at least each and every element of Claim 1 either literally or equivalently.

34.     To the extent that DynaEnergetics first recovers damages from SWM for the manufacture or sale of any Thunder Gun, PerfAlign, and/or PerfStorm system that is later used or re-sold by NexTier in connection with the co-pending action referenced above, DynaEnergetics does not seek double recovery with respect to such sales and expects that its recovery from NexTier will be reduced by an appropriate amount to prevent such double recovery.

### D.  YJOT Pre-Wired Perforating Gun

35.     Upon information and belief, Counterclaim-Defendant has, either alone or in concert, manufactured, used, distributed, sold, or offered to sell the Yellow Jacket Oil Tools Pre-Wired Perforating Gun (hereinafter, "YJOT Pre-Wired Perforating Gun") purchased or licensed from G&H Diversified Manufacturing, LP (hereinafter, "G&H") or Yellow Jacket Oil Tools, LLC (collectively with G&H, "YJOT") in the United States, including within the State of Texas and within this District.

36.     DynaEnergetics has also brought infringement allegations against YJOT in a separate pending action entitled *DynaEnergetics Europe GmbH, et al v. Yellow Jacket Oil Tools, LLC*, Civil Action No. 6:20-cv-01110-ADA (W.D. Tex.).  In a subsequent action filed for the purpose of avoiding the jurisdiction of the Western District of Texas, G&H brought an action for declaratory judgment against DynaEnergetics, styled *G&H Diversified Manufacturing, LP v. DynaEnergetics Europe GmbH, et al,* Civil Action No. 3:20-cv-376 (S.D. Tex.).

37.     YJOT describes and provides photos of the YJOT Pre-Wired Perforating Gun on its website at www.yjoiltools.com/Perforating-Guns/Pre-Wired-Perforating-Gun. A copy of YJOT's website advertising the YJOT Pre-Wired Perforating Gun and the corresponding photos

(as accessed on December 4, 2020) is attached hereto and incorporated herein by reference as Exhibit I.   A copy of YJOT's downloadable PDF specifications for the YJOT Pre-Wired Perforating Gun (as downloaded on December 4, 2020) is attached hereto and incorporated herein by reference as Exhibit J.

38.   The YJOT Pre-Wired Perforating Gun infringes one or more claims of the '697 Patent, including at least each and every element of Claim 1 either literally or equivalently, as set forth below.

39.   The YJOT Pre-Wired Perforating Gun either literally or equivalently contains an electrical connection assembly for establishing an electrical connection in a tool string. An example of this is shown in the below photo from Exhibit J, and from the below still image of a video displaying the YJOT Pre-Wired Perforating Gun, available at https://www.youtube.com/watch?v=Hm4vE46ZgK0[2] (last accessed November 24, 2020) (annotations added).



---

[2] Upon the filing of DynaEnergetics' Complaint against YJOT on December 4, 2020, the YouTube video displaying the YJOT Pre-Wired Perforating Gun was active.  However, Defendants appear to have removed the video since that time, and this link is no longer active.



Tandem seal adapter          Pin connector to bulkhead



40.     The electrical connection assembly in the YJOT Pre-Wired Perforating Gun either literally or equivalently comprises a tandem seal adapter having a first end, a second end and a bore that extends from the first end to the second end and entirely through the tandem seal adapter. The tandem seal adapter, as shown in the still image above, connects the top end and bottom end of successive gun assemblies.

41.     The electrical connection assembly in the YJOT Pre-Wired Perforating Gun either literally or equivalently comprises a perforation gun system comprising a first outer gun carrier, a shaped charge, and a first detonator, wherein the shaped charge and the first detonator are positioned within the first outer gun carrier, wherein the first outer gun carrier is connected to the first end of the tandem seal adapter. An example of this is shown in the below photo from Exhibit I, which shows the YJOT Pre-Wired Perforating Gun outer gun carrier, an assembly including a carrier for housing a shaped charge and a first detonator (not shown).  The opening to receive the detonator, which is on the side not shown in the first image below, is shown in the below still image from the video of the YJOT Pre-Wired Perforating Gun available at https://www.youtube.com/watch?v=Hm4vE46ZgK0 (last accessed November 24, 2020) (annotations added). The YJOT Pre-Wired Perforating Gun assembly is positioned within the outer

gun carrier, wherein the outer gun carrier is connected to the first end of the tandem seal adapter (not shown in the figures below).





42.     The electrical connection assembly in the YJOT Pre-Wired Perforating Gun either literally or equivalently comprises a pressure bulkhead having an outer surface, a first end and a second end, the outer surface of the pressure bulkhead is sealing received in the bore of the tandem

seal adapter, the pressure bulkhead also having a pin connector assembly extending through the pressure bulkhead from a first pin connector end to a second pin connector end, and configured to relay an electrical signal from the first end of the pressure bulkhead to the second end of the pressure bulkhead, wherein the first pin connector end extends beyond the first end of the pressure bulkhead and the second pin connector end extends beyond the second end of the pressure bulkhead. As noted in the below description and photo from Exhibit J, the YJOT Pre-Wired Perforating Gun has pre-installed wires connecting to "a plunging gun contact that mates directly to the conventional pressure or pass-thru switch in the sub above." That description of the YJOT Pre-Wired Perforating Gun indicates that it comprises a pressure bulkhead received in the bore of the tandem seal adapter and having a pin connector assembly extending through the pressure bulkhead from a first pin connector end to a second pin connector end that is configured to relay an electrical signal from the first end of the pressure bulkhead to the second end of the pressure bulkhead, wherein the first pin connector end extends beyond the first end of the pressure bulkhead and the second pin connector end extends beyond the second end of the pressure bulkhead.  This configuration is also shown in the below still images from the video of the YJOT Pre-Wired Perforating Gun available at https://www.youtube.com/watch?v=Hm4vE46ZgK0 (last accessed November 24, 2020) (annotations added).

**Faster assembly**
- Lead and ground wires pre-installed

- Lead wire is connected to a plunging gun contact that mates directly to the conventional pressure or pass-thru switch in the sub above



**Top End**

Plunging gun contact to connect directly to conventional pressure or pass-thru switch in sub above



43.    The electrical connection assembly in the YJOT Pre-Wired Perforating Gun either literally or equivalently comprises the first detonator being in electrical communication with the pin connector assembly, wherein the tandem seal adapter and the pressure bulkhead are configured to provide a seal between the detonator and an environment on the second end of the tandem seal adapter.

44.    To the extent that DynaEnergetics first recovers damages from YJOT for the manufacture or sale of any YJOT Pre-Wired Perforating Gun that is later used or re-sold by NexTier in connection with the co-pending action referenced above, DynaEnergetics does not seek double recovery with respect to such sales and expects that its recovery from NexTier will be reduced by an appropriate amount to prevent such double recovery.

**E.  Notice**

45.    Counterclaim-Defendant has known of the '697 Patent and its own infringing activities since at least as early as the filing of the Complaint on December 30, 2020.  Further, on

September 11, 2020, DynaEnergetics put Counterclaim-Defendant on notice of U.S. Patent Application 16/585,790 (the "'790 Application") that led to the '697 Patent.  A copy of the letter sent to Counterclaim-Defendant on September 11, 2020 is attached hereto and incorporated herein by reference as Exhibit K.  The claims in the published '790 Application are identical to the claims that actually issued in the '697 Patent.  Counterclaim-Defendant has been on notice of the claims that issued in the '697 Patent since at least as early as September 11, 2020.  Counterclaim-Defendant responded on September 22, 2020, confirming that it received and reviewed the September 11, 2020 letter, but Counterclaim-Defendant has not ceased its infringing activity. DynaEnergetics sent another letter on November 25, 2020, informing Counterclaim-Defendant of the issuance of the '697 Patent and again notifying Counterclaim-Defendant of its infringement. Counterclaim-Defendant has not responded to the November 25, 2020 letter and has not ceased its infringing activity.

46.     On December 4, 2020, DynaEnergetics brought claims against YJOT for infringement of the '697 Patent via the manufacture, use, distribution, sale, or offer to sell its YJOT Pre-Wired Perforating Gun product in the United States in the co-pending captioned *DynaEnergetics Europe GmbH, et al v. Yellow Jacket Oil Tools, LLC*, Civil Action No. 6:20-cv-01110-ADA (W.D. Tex.).  Upon information and belief, NexTier was aware of DynaEnergetics' allegations of infringement against this product as of that date or shortly thereafter.

47.     On January 28, 2021, DynaEnergetics brought claims against SWM for infringement of the '697 Patent via the manufacture, use, distribution, sale, or offer to sell its Thunder Gun, PerfAlign, and PerfStorm products in the United States in the co-pending captioned *DynaEnergetics Europe GmbH et al v. SWM International, LLC*, Civil Action No. 3:21-CV-192-

M (N.D. Tex.). Upon information and belief, NexTier was aware of DynaEnergetics' allegations of infringement against these products as of that date or shortly thereafter.

48. Because Counterclaim-Defendant is using infringing technology to compete directly with DynaEnergetics, it is causing irreparable harm to DynaEnergetics, thereby forcing DynaEnergetics to bring this lawsuit to protect its intellectual property.

## <u>COUNT I</u>
**(Infringement of the '697 Patent via manufacture, use, or sale of GameChanger)**

49. DynaEnergetics repeats and incorporates by reference the allegations contained in the foregoing paragraphs, as if stated fully herein.

50. DynaEnergetics is the owner of the '697 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '697 Patent against infringers, and to collect damages for all relevant times.

51. Counterclaim-Defendant has, either alone or in concert, directly infringed and continues to infringe the '697 Patent, either literally or through the doctrine of equivalents, by making, using, importing, supplying, distributing, selling and/or offering for sale the GameChanger within the United States, in violation of 35 U.S.C. § 271(a).

52. Upon information and belief, Counterclaim-Defendant has made and is continuing to make unlawful gains and profits from its infringement of the '697 Patent.

53. At least as early as November 25, 2020 or, alternatively, at least as early as the filing of the Complaint in the Western District of Texas on December 30, 2020, Counterclaim-Defendant has been on notice of and has had knowledge of, the '697 Patent and of DynaEnergetics' allegations of infringement. Counterclaim-Defendant's infringement of the '697 Patent has been willful and deliberate at least since this date.

54.     DynaEnergetics has been damaged and irreparably harmed by Counterclaim-Defendant's infringement of the '697 Patent for which DynaEnergetics is entitled to relief under 35 U.S.C. § 284 and 35 U.S.C. § 154(d).  DynaEnergetics will continue to suffer damages and irreparable harm unless Counterclaim-Defendant is enjoined preliminarily and permanently by this Court from continuing its infringement.

## <u>COUNT II</u>
**(Infringement of the '697 Patent via manufacture, use, or sale of Thunder Gun, PerfAlign, and/or PerfStorm)**

55.     DynaEnergetics repeats and incorporates by reference the allegations contained in the foregoing paragraphs, as if stated fully herein.

56.     DynaEnergetics is the owner of the '697 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '697 Patent against infringers, and to collect damages for all relevant times.

57.     Counterclaim-Defendant has, either alone or in concert, directly infringed and continues to infringe the '697 Patent, either literally or through the doctrine of equivalents, by making, using, importing, supplying, distributing, selling and/or offering for sale the Thunder Gun, PerfAlign, and/or PerfStorm within the United States, in violation of 35 U.S.C. § 271(a).

58.     Upon information and belief, Counterclaim-Defendant has made and is continuing to make unlawful gains and profits from its infringement of the '697 Patent.

59.     At least as early as November 25, 2020 or, alternatively, at least as early as January 28, 2021 or, alternatively, at least as early as the filing of the First Amended Complaint in the Western District of Texas on April 30, 2021, Counterclaim-Defendant has been on notice of and has had knowledge of the '697 Patent and of DynaEnergetics' allegations of infringement. Counterclaim-Defendant's infringement of the '697 Patent has been willful and deliberate at least since this date.

60.     DynaEnergetics has been damaged and irreparably harmed by Counterclaim-Defendant's infringement of the '697 Patent for which DynaEnergetics is entitled to relief under 35 U.S.C. § 284 and 35 U.S.C. § 154(d).  DynaEnergetics will continue to suffer damages and irreparable harm unless Counterclaim-Defendant is enjoined preliminarily and permanently by this Court from continuing its infringement.

## COUNT III
**(Infringement of the '697 Patent via use, sale, or offer for sale of the YJOT Pre-Wired Perforating Gun)**

61.     DynaEnergetics repeats and incorporates by reference the allegations contained in the foregoing paragraphs, as if stated fully herein.

62.     DynaEnergetics is the owner of the '697 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '697 Patent against infringers, and to collect damages for all relevant times.

63.     Counterclaim-Defendant has, either alone or in concert, directly infringed and continues to infringe the '697 Patent, either literally or through the doctrine of equivalents, by making, using, importing, supplying, distributing, selling and/or offering for sale the YJOT Pre-Wired Perforating Gun within the United States, in violation of 35 U.S.C. § 271(a).

64.     Upon information and belief, Counterclaim-Defendant has made and is continuing to make unlawful gains and profits from its infringement of the '697 Patent.

65.     At least as early as November 25, 2020 or, alternatively, at least as early as December 4, 2020 or, alternatively, at least as early as the filing of the First Amended Complaint in the Western District of Texas on April 30, 2021, Counterclaim-Defendant has been on notice of and has had knowledge of, the '697 Patent and of DynaEnergetics' allegations of infringement. Counterclaim-Defendant's infringement of the '697 Patent has been willful and deliberate at least since this date.

27

66.     DynaEnergetics has been damaged and irreparably harmed by Counterclaim-Defendant's infringement of the '697 Patent for which DynaEnergetics is entitled to relief under 35 U.S.C. § 284 and 35 U.S.C. § 154(d).  DynaEnergetics will continue to suffer damages and irreparable harm unless Counterclaim-Defendant is enjoined preliminarily and permanently by this Court from continuing its infringement.

## ATTORNEYS' FEES

67.     Pursuant to 35 U.S.C. § 285, DynaEnergetics is entitled to and hereby demands its reasonable attorneys' fees in this case.

## JURY DEMAND

68.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, DynaEnergetics respectfully requests a trial by jury of any issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, DynaEnergetics respectfully asks that the Court issue citation for Counterclaim-Defendant to appear and answer and seeks the following additional relief:

A.     that Counterclaim-Defendant be declared to have directly infringed one or more of the claims of the '697 Patent under 35 U.S.C. § 271(a) through the manufacture, use, or sale of GameChanger;

B.     that Counterclaim-Defendant be declared to have directly infringed one or more of the claims of the '697 Patent under 35 U.S.C. § 271(a) through the sale of Thunder Gun, PerfAlign, and/or PerfStorm systems;

C.     that Counterclaim-Defendant be declared to have directly infringed one or more of the claims of the '697 Patent under 35 U.S.C. § 271(a) through the sale of the YJOT Pre-Wired Perforating Gun;

D.     that that Court issue a preliminary and permanent injunction pursuant to 35 U.S.C. § 283 against the continuing infringement of the claims of the '697 Patent by Counterclaim-Defendant, its officers, agents, employees, attorneys, representatives, and all others acting in concert therewith;

E.     that the Court order an accounting for all monies received by or on behalf of Counterclaim-Defendant and all damages sustained by DynaEnergetics as a result of Counterclaim-Defendant's aforementioned infringements, that such monies and damages be awarded to DynaEnergetics, and that interest and costs be assessed against Counterclaim-Defendant pursuant to 35 U.S.C. § 284 and 35 U.S.C. § 154(d);

F.     that the Court declare that Counterclaim-Defendant's infringement was and is willful from the time it became aware of the infringing nature of their product and award treble damages for the period of such willful infringement of the '697 Patent, pursuant to 35 U.S.C. § 284;

G.     that the Court declare this an exceptional case and order that Counterclaim-Defendant pay to DynaEnergetics its reasonable attorneys' fees and costs, pursuant to 35 U.S.C. § 285; and

H.     that the Court award such further and other relief to DynaEnergetics as the Court deems just, together with its costs and disbursements in this action.

Dated: July 21, 2021

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By: */s/ Barry J. Herman*
Barry J. Herman (*pro hac vice*)
Admitted to the Maryland State Bar
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Email: Barry.Herman@wbd-us.com

*Attorney-in-Charge for Defendants /*
*Counterclaim-Plaintiffs DynaEnergetics Europe*
*GmbH and DynaEnergetics US, Inc.*

OF COUNSEL:

WOMBLE BOND DICKINSON (US) LLP
Preston H. Heard (*pro hac vice*)
Georgia Bar No. 476319
271 17th Street, NW, Suite 2400
Atlanta, GA 30363
Telephone: (404) 888-7366
Email: Preston.Heard@wbd-us.com

WOMBLE BOND DICKINSON (US) LLP
Stephanie Nguyen (*pro hac vice* to be filed)
DC Bar No. 1046300
Julie Giardina (*pro hac vice* to be filed)
Admitted to the Maryland State Bar
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5800
Email: Stephanie.Nguyen@wbd-us.com
Email: Julie.Giardina@wbd-us.com

MOYLES IP, LLC
Lisa J. Moyles (*pro hac vice* to be filed)
Connecticut State Bar No. 425652
Jason M. Rockman (*pro hac vice* to be filed)
New York Bar No. 4450953
One Enterprise Drive, Suite 428
Shelton, CT 06484
Telephone: (203) 428-4420
Email: lmoyles@moylesip.com
Email: jrockman@moylesip.com

RUSTY HARDIN & ASSOCIATES, LLP
Megan C. Moore
Federal Bar No. 963966
Texas Bar No. 24054322
Terry Kernell
Federal Bar No. 15074
Texas Bar No. 11339020
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Email: mmoore@rustyhardin.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing *via* electronic mail to all counsel of record.

*/s/ Barry J. Herman*