**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **NEXTIER COMPLETION** | § | |
| **SOLUTIONS INC.** | § | |
| | § | |
| *Plaintiff / Counterclaim-Defendant,* | § | |
| | § | |
| v. | § | **Civil Action No. 4:21-cv-01328** |
| | § | |
| **DYNAENERGETICS EUROPE GMBH,** | § | **Jury Trial Demanded** |
| and **DYNAENERGETICS US, INC.** | § | |
| | § | |
| *Defendants / Counterclaim-Plaintiffs.* | § | |

---

**PLAINTIFF NEXTIER COMPLETION SOLUTIONS INC.'S
RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY**

---

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 2

    A.    DynaEnergetics' Infringement Allegations and Parallel Litigation ...................... 2

    B.    NCS's Relevant Witnesses and Documents Reside in Houston, Texas ................ 4

    C.    DynaEnergetics Has No Meaningful Connection to the WDTX ........................... 5

    D.    Third-Party Manufacturers of Accused Products Are Outside the WDTX ........... 6

    E.    Identified Non-Obviousness and Prior Art Witnesses Are in the SDTX or Otherwise Outside the WDTX ............................................................................... 7

ARGUMENT ........................................................................................................... 11

    F.    All Private Interest Factors Favor Transfer to the SDTX .................................... 11

        1.    The Ease of Access to Sources of Proof Weighs Heavily in Favor of Transfer 11

        2.    The Availability of Compulsory Process to Secure Attendance of Witnesses Strongly Favors Transfer ........................................................................................ 13

        3.    The Cost of Attendance for Willing Witnesses Heavily Favors Transfer ....... 16

        4.    Judicial Economy Weighs in Favor of Transfer ............................................... 17

    G.    The Public Interest Factors Also Favor Transfer to the SDTX ........................... 18

        1.    Administrative Difficulties Related to Court Congestion Favors Transfer ..... 18

        2.    The SDTX's Localized Interest Weighs Heavily in Favor of Transfer ........... 19

        3.    The Remaining Public Interest Factors are Neutral ......................................... 21

CONCLUSION ........................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*10Tales, Inc. v. TikTok Inc.*,
  2021 WL 2043978 (W.D. Tex. May 21, 2021) .......................................................... 13, 14, 17

*Auto–Dril, Inc. v. National Oilwell Varco, L.P.*,
  2016 WL 6909479 (W.D. Tex. 2016) .......................................................................... 14, 16

*Bedrock Logistics, LLC v. Braintree Labs., Inc.*,
  2017 WL 1547013 (N.D. Tex. 2017) .................................................................................... 22

*DataQuill, Ltd. v. Apple, Inc.*,
  2014 WL 2722201 (W.D. Tex. June 13, 2014) .................................................................... 20

*DynaEnergetics Europe v. G&H Diversified Mfg., LP*,
  No. 6:20-CV-01110-ADA (W.D. Tex.) .................................................................................. 6

*DynaEnergetics Europe v. SWM Int'l*,
  No. 3:21-cv-00192-M (N.D. Tex.) ......................................................................................... 7

*Electronics for Imaging, Inc. v. Coyle*,
  394 F.3d 1341 (Fed. Cir. 2005) ......................................................................................... 9, 10

*Epic Tech, LLC v. Arno Res., LLC*,
  2020 WL 5351078 (W.D. Tex. 2020) .................................................................................. 22

*Frank's Tong Serv., Inc. v. Grey Wolf Drilling Co., L.P.*,
  2007 WL 5186798 (S.D. Tex. 2007) .................................................................................... 22

*GeoTag, Inc. v. Starbucks Corp.*,
  2013 WL 890484 (E.D. Tex. Jan. 14, 2013) ........................................................................ 13

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ............................................................................................................. 20

*Hart v. Donostia LLC*,
  290 F. Supp. 3d 627 (W.D. Tex. 2018) ............................................................................. 9, 10

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010) ........................................................................................... 19

*In re Apple Inc.*,
  979 F.3d 133 (Fed. Cir. 2020) ............................................................................................. 12

*In re Apple, Inc.*,
  581 F.App'x 886 (Fed. Cir. 2014) .................................................................................. 13, 19

*In re Genentech*,
566 F.3d 1338 (Fed. Cir. 2009) ........................................................................... 12, 16, 18, 19

*In re Hulu, LLC*,
2021 WL 3278194 (Fed. Cir., 2021) ..................................................................... 14, 15, 16

*In re Morgan Stanley*,
417 F. App'x 947 (Fed. Cir. 2011) ....................................................................... 18

*In re Nintendo*,
589 F.3d at 1198 .................................................................................................. 20

*In re Verizon Bus. Network Servs. Inc.*,
635 F.3d 559 (Fed. Cir. 2011) ............................................................................. 18

*In re VoIP-PAL.com, Inc.*,
845 Fed. Appx. 940 (Fed. Cir. 2021) ................................................................... 2, 8, 10

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ............................................................................... 20

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*,
342 U.S. 180 (1952) ............................................................................................. 10

*Mann Mfg., Inc. v. Hortex, Inc.*,
439 F.2d 403 (5th Cir. 1971) ............................................................................... 9

*Mission Insurance Co. v. Puritan Fashions Corp.*,
706 F.2d 599 (5th Cir. 1983) ............................................................................... 10

*RTIC Drinkware, LLC v. Yeti Coolers, LLC*,
2016 WL 3999532 (S.D. Tex. 2016) .................................................................... 9

*SITO Mobile R&D IP v. Hulu, LLC*,
2021 WL 1166772 (W.D.Tex., 2021) ................................................................... 16

*Uniloc USA v Box, Inc.*,
2018 WL 2729202 (W.D. Tex. June 6, 2018) ...................................................... 17, 19

*USPC Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*,
2011 WL 1103372 (N.D. Tex. Mar. 25, 2011) ..................................................... 18

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ........................................................ 19

*XY, LLC v. Trans Ova Genetics, LC*,
2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ....................................................... 20

**Statutes**

28 U.S.C. § 1404(a) ................................................................................................ 9

35 U.S.C. § 102(a)(1) .............................................................................................. 7

35 U.S.C. § 103 ...................................................................................................... 7

Plaintiff NexTier Completion Solutions Inc. ("NexTier") submits this response in opposition to the motion of Defendants DynaEnergetics Europe GmbH and DynaEnergetics US, Inc. (collectively, "DynaEnergetics") to dismiss, transfer or stay the above-captioned action. *See* Dkt. 23.

## I. INTRODUCTION

This is a case between two Houston-based companies[1] that focuses on oil well perforating gun products that are designed and manufactured in Houston. As a result, the overwhelming bulk of the evidence and witnesses will come from both parties' offices in Houston, giving Houston a strong local interest in the outcome of this dispute. But instead of filing its suit against NexTier in Houston, where it has filed multiple other lawsuits involving the same patent-at-issue, it made the strategic decision to sue NexTier in Waco.

DynaEnergetics now moves to dismiss, stay, or transfer this case—the Houston case—to Waco, despite compelling circumstances that favor keeping this case in Houston, including substantial progress here that has not occurred in the Waco case, which is currently limited to claim construction and venue discovery under the local rules. Nonetheless, DynaEnergetics has not been shy about using this case to circumvent the discovery limitations in the Waco case, serving broad-based, early discovery in this case regarding infringement, prior art and damages. Indeed, nearly *four weeks* before the Rule 26(f) conference, DynaEnergetics had already served seven interrogatories and thirty-four requests for production.

In addition to the strong local interest Houston has in this case, this case is further along, progressing more quickly, and more convenient for the parties and witnesses than the co-pending

---

[1] Although Defendant DynaEnergetics Europe GmbH is based out of Germany, its American subsidiary and co-plaintiff, DynaEnergetics US, Inc., is headquartered in Houston and purports to be the exclusive licensee of the asserted patent in the United States. Dkt. 25 at pp. 5, 7.

case in Waco.  However, DynaEnergetics argues that this Court should perform no venue analysis at all. First, DynaEnergetics tells this Court not to look at the proper venue for this case because DynaEnergetics is supposedly the first filer under the "first-to-file rule," a guideline which only six months ago the Federal Circuit said is "committed to the district court's discretion."[2]  Next, DynaEnergetics tells the Court not to look at the proper venue, because, although NexTier filed first, the "anticipatory suit" exception to the first-to-file rule applies.  That is, whoever filed first, DynaEnergetics does not want this Court to evaluate the proper venue.  This is completely backwards; regardless of who filed first, this case should go forward in the proper venue—this District—considering "judicial and litigant economy, and the just and effective disposition of [the] dispute," the underlying policy upon which the first-to-file rule is premised.[3]

Granting DynaEnergetics' motion would undermine judicial efficiency, slow the resolution of the dispute, inconvenience witnesses, add to litigation costs, and place a Houston-based dispute in a city with no relation to the matter. The Court should instead deny the motion.

## II.  FACTUAL BACKGROUND

### A.    DynaEnergetics' Infringement Allegations and Parallel Litigation

DynaEnergetics has accused NexTier Completion Solutions ("NexTier") of infringing U.S. Patent No. 10,844,697 ("the '697 Patent"). *See* Dkt. 25 at pp. 23-27; *see also* Ex. C (*DynaEnergetics Europe GmbH v. NexTier Oilfield Solutions Inc.*, Civil Action No. 6-20-cv-01201 (W.D. Tex.), ECF 1) at 9. The '697 Patent is directed toward perforating guns used by oilfield companies to prepare oil and gas wells for production. '697 Patent at 1:33-61. The perforating guns accused in this litigation include NexTier's own products and third-party products

---

[2] See *In re VoIP-PAL.com, Inc.*, 845 Fed. Appx. 940, 942 (Fed. Cir. 2021) discussed herein.

[3] *Id.*

designed by G&H Diversified Manufacturing, LP ("G&H") and by SWM International, LLC ("SWM"). Dkt. 25 at pp. 25-27.

The litigation between DynaEnergetics and NexTier is part of a broader campaign of litigation—DynaEnergetics has asserted the '697 Patent in multiple cases across multiple judicial districts, including two cases that it has filed in the Houston Division of the Southern District of Texas (the *Nexus* and *Vigor*[4] cases), and a declaratory judgment action that G&H filed against DynaEnergetics in this District regarding the accused G&H products from this case. *See* Ex. B (Summary of cases regarding the '697 Patent).

Before NexTier was added as a defendant in the co-pending Western District of Texas ("WDTX") (Waco) case covering the same accused products, NexTier filed this declaratory judgment action for non-infringement of the '697 Patent, based on the undisputed fact that ***both*** parties are headquartered in ***Houston***. This is the fourth case in this District regarding the '697 Patent, and the second involving the accused G&H products. Because these cases are closely related, this Court will be resolving many of the same issues presented in this case regardless of whether or not DynaEnergetics' motion is granted, hence there is no judicial efficiency to be gained in grating the motion.

Meanwhile, many of the WDTX (Waco) cases that DynaEnergetics has filed have either been dismissed or will likely be dismissed or transferred soon:

| Civil Action No. | Description |
|---|---|
| 6-20-cv-01082 (WDTX) | DynaEnergetics' case filed against Yellowjacket Oilfield Services, LLC (dismissed) |
| 6-20-cv-01110 (WDTX) | DynaEnergetics' case filed against Yellow Jacket Oil Tools, LLC (the "WDTX *G&H* Case") (the WDTX recently transferred the |

---

[4] DynaEnergetics has filed a "Stipulation of Dismissal Without Prejudice" in the *Vigor* case, so it appears to have settled. *DynaEnergetics Europe GmbH et al v. Vigor USA, LLC*, SDTX-4-21-cv-00283 (S.D. Tex.) ECF 30.

| Civil Action No. | Description |
|---|---|
| | case against Yellow Jacket Oil Tools to the SDTX, although the case was severed as to G&H, which currently remains in the WDTX) |
| 6-20-cv-01201 (WDTX) | The co-pending NexTier case (motion to transfer pending) |
| 6-21-cv-00084 (WDTX) | DynaEnergetics' case filed against Rock Completion Tools, LLC (dismissed as to Rock Completion Tools, LLC and Rock Faithwell International Co., Ltd.; a motion for default is pending as to the remaining defendant—APT American LLC) |
| 6-21-cv-00085 (WDTX) | DynaEnergetics' case filed against GR Energy Services (the "*GR Energy Services* case") |
| 6-21-cv-00349 (WDTX) | DynaEnergetics' case filed against Horizontal Wireline Services (the "*Horizontal Wireline Services* case") |
| 6-21-cv-00371 (WDTX) | DynaEnergetics' case filed against PerfX (the "WDTX *PerfX* case") (motions to dismiss and transfer pending)[5] |
| 6-21-cv-00372 (WDTX) | DynaEnergetics' case filed against Oil Stated International, Inc. (the "*Oil States*" case) (dismissed) |

Only two of the pending WDTX (Waco) cases—the *GR Energy Services* and *Horizontal Wireline Services* cases—do not have pending dispositive motions, and more importantly, neither involves the accused products in this case.

## B.   NexTier's Relevant Witnesses and Documents Reside in Houston, Texas

Houston is the center of NexTier's business. NexTier is a corporation with its principal place of business and headquarters in Houston. Ex. G (Declaration of Lloyd Hegle) at ¶ 5. Three hundred and thirty-four of NexTier's employees work at NexTier's headquarters and reside within

---

[5] It is worth noting, given DynaEnergetics' present arguments about first-filed versus second-filed cases, that DynaEnergetics' WDTX *PerfX* case is the second-filed case between those parties. PerfX had already filed a declaratory judgment action regarding the '697 Patent against DynaEnergetics in the District of Colorado (where PerfX is headquartered) on December 15, 2020, four months before DynaEnergetics filed the WDTX *PerfX* case regarding the same subject matter. PerfX has moved to dismiss the WDTX or transfer it the District of Colorado, and those motions are currently pending. *See DynaEnergetics Europe GmbH et al v. PerfX Wireline Services, LLC*, Civil Action No. 6-21-cv-00371 (W.D. Tex.) ECF 11, 12.

commuting distance of Houston. *Id*. at ¶ 6. Unsurprisingly, NexTier maintains its documents and records at its Houston headquarters, including technical, engineering, and sales documents for the products used and manufactured by NexTier. *Id*. at ¶ 8. Those Houston-based employees are responsible for the key sales and management decisions relating to NexTier's business. *Id*. at ¶ 9. This includes NexTier's executives who live within commuting distance of Houston and employees who are most knowledgeable about the research, design, and development of the accused "GameChanger$^{TM}$ Perforating System" ("GameChanger") product. *Id*. at ¶¶ 10, 16.

Naturally, the accused products have substantial ties to NexTier's headquarters in Houston. NexTier designed, developed, and manufactured the GameChanger in Houston. *Id*. at ¶¶ 13, 14. NexTier's documents related to those efforts are in Houston, including technical, engineering, and sales documents. *Id*. at ¶¶ 8, 18. Similarly, NexTier's Houston headquarters maintains documents and records relevant to parts purchased from G&H. *Id*. at ¶ 19. No relevant documents are located anywhere near Waco. *Id*. at ¶ 18, 19.

**C.      DynaEnergetics Has No Meaningful Connection to the WDTX**

DynaEnergetics' U.S. headquarters is also in Houston, Texas.[6] Public information shows that dozens of DynaEnergetics' relevant employees are based in Houston, including several whom NexTier is likely to call as witnesses: Edwin Reek (Vice President of Product Management and Marketing), Millad Mortazavi (Fracturing Design and Business Development), Thomas Meyer (Market Development Manager), Jim McKirahan (Director of Finance), and Timothy Adams (Vice President of Business Development). Ex. H.

---

[6] Specifically, DynaEnergetics US, Inc. is organized under Colorado law and has its principal place of business in Houston, Texas. Dkt. 24 at p. 5. Its parent corporation, DynaEnergetics Europe GmbH, is organized under the laws of Germany. *Id.* at p. 5. DynaEnergetics US, Inc. is the exclusive licensee of the '697 Patent in the United States. *Id.* at p. 7.

In its motion, DynaEnergetics emphasizes its so-called "flagship U.S. location" in Blum, TX. Incredibly, this "flagship" location is not even listed among its "Global Offices" on DynaEnergetics' own website, though it does list its offices in **Houston**, Germany, the United Arab Emirates, and Canada. Ex. D (https://www.dynaenergetics.com/about/global-offices). Rather, the Blum facility is a manufacturing facility which does not appear to have any involvement in the research, design, and development of the '697 Patent or DynaEnergetics' alleged embodiment.[7]

**D.    Third-Party Manufacturers of Accused Products Are Outside the WDTX**

DynaEnergetics' answer also accuses NexTier of infringing the '697 Patent by using third-party products. *See* Dkt. 25 at pp. 25-27. However, neither G&H nor SWM, the suppliers of the accused third-party products, are located in Waco.

With respect to DynaEnergetics' allegations regarding G&H's involvement, G&H is unique among third parties because it manufactures components of the accused GameChanger product. Ex. 1 at ¶ 29. These components are manufactured at G&H's Houston headquarters, and the relevant documents and witnesses would similarly be in Houston. *See* Ex. I (G&H's Motion to Dismiss or Transfer, *DynaEnergetics Europe v. G&H Diversified Mfg., LP*, No. 6:20-CV-01110-ADA (W.D. Tex.), ECF 24) at 8.

---

[7] DynaEnergetics' initial disclosures demonstrate that the Blum facility has little relevance to the research, design and development of the '697 Patent or DynaEnergetics' alleged embodiment. *See* Ex. L (DynaEnergetics' Initial Disclosures). The Blum employees are listed as having generic information about "sales and marketing," "damages", "willful infringement," and "manufacture and sales" of DynaEnergetics' products, and "Non-obviousness." *Id*. At p. 3-6. The persons listed as having knowledge about research, design, and development are in Germany or Oklahoma, with all but one witness residing in Germany. *Id*. (listing Thilo Scharf, Liam McNelis, Christian Eitschberger, Frank Priess, and Jason Booher).

With respect to DynaEnergetics' allegations regarding SWM's involvement, DynaEnergetics' answer states that it has already sued SWM regarding the same asserted patent and accused products in the Northern District of Texas and that it is not seeking a double recovery. Dkt. 25 at p. 18. As a result, DynaEnergetics' attempt to interject SWM into this lawsuit is irrelevant to the pending motion. However, even setting that aside, SWM is headquartered in Pampa, Texas—not the WDTX or anywhere near Waco. *See* Ex. J (SWM's Website); *see also* Ex. K (*DynaEnergetics Europe v. SWM Int'l*, No. 3:21-cv-00192 (N.D. Tex.) ECF 1) at 1. As a result, to the extent SWM could possibly be relevant to this case, any documents and witnesses would be located outside of both the SDTX and WDTX in Pampa, Texas. *Id*.

**E.    Identified Third Party Invalidity Witnesses Are in the SDTX or Otherwise Outside the WDTX**

In its initial disclosures, DynaEnergetics has identified Schlumberger, Apache Corporation, Halliburton, Weatherford, Baker Hughes, Welltec, and Patriot as having knowledge of invalidity and non-obviousness. *See* Ex. L (DynaEnergetics' Initial Disclosures) at 7. All seven of these companies are based in the SDTX. Ex. M.

At least one of those SDTX-based companies, Schlumberger, is also relevant as a source of prior art, and particularly system art. In its invalidity contentions, NexTier has identified at least two prior art references assigned to Schlumberger that are relevant to the '697 Patent. *See* Ex. N (U.S. Pat No. 10,077,641); Ex. O (U.S. Pat. Pub. No. 2016/0084048). Related to these two references are the Schlumberger Fractal and Safe Jet systems, which are also potential invalidating systems under at least 35 U.S.C. § 102(a)(1) and § 103 and are the subject of a PGR filed by NexTier and SWM. *SWM International, LLC et al v. DynaEnergetics Europe GmbH*, PGR2021-00097 (PTAB). Seven of the inventors of these prior art references live and work in the Houston area, and none of them live in the WDTX. *See* Ex. P (Prior Art Inventors' LinkedIn and Google

Maps); Ex. 1, Decl. of Michael McBride at ¶ 18 (showing location of witnesses). These inventors, as well as other witnesses at Schlumberger, will therefore possess information and documents on patents and systems that are directly relevant to the validity of the '697 Patent and their testimony will likely be relevant as a source of proving up the system art embodied by the Fractal and SafeJet systems.

## III.  NATURE AND STAGE OF THE PROCEEDING

DynaEnergetics filed its original Complaint in the WDTX case on December 30, 2020, naming NexTier Oilfield Solutions Inc. ("NexTier Oilfield") as the sole defendant. Ex. C. NexTier Completion Solutions Inc. (the proper party) filed this declaratory judgment action for non-infringement of the '697 Patent on April 21, 2021. Dkt. 1. This decision was based, in part, on the fact that both parties are headquartered in Houston, with facts of the case that are most closely tied to Houston. On April 30, 2021, DynaEnergetics filed an Amended Complaint in the WDTX, adding NexTier Completion Solutions Inc. as a defendant. Ex. I. NexTier moved to transfer the WDTX case to this District on June 23, 2021. *DynaEnergetics Europe GmbH v. NexTier Oilfield Solutions Inc.*, Civil Action No. 6-20-cv-01201 (W.D. Tex.) ECF 34. Now in this case, DynaEnergetics has filed its answer (Dkt. 25), along with the present Motion.

## IV.  STATEMENT OF ISSUES

(1) Do the § 1404 convenience factors weigh in favor of this District, justifying an exception to the first-to-file rule? Application of the first-to-file rule "is ultimately committed to the district court's discretion." *In re VoIP-PAL.com, Inc.*, 845 Fed. Appx. 940, 942 (Fed. Cir. 2021).

(2) If the Court opts not to make a venue determination, should it keep the case on track with the co-pending *Nexus* case, or should it stay the case and let the WDTX to make

the decision? As with the first-to-file rule, the decision to stay a declaratory judgment action is reviewed for an abuse of discretion. *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005).

(3) Was this case filed for proper purposes, or is it an improper anticipatory suit for venue-shopping purposes that should be dismissed in favor of the WDTX? This issue is likewise reviewed for an abuse of discretion. *Id.* at 1347.

## V.  LEGAL AUTHORITY

Although venue determinations typically favor the first-filed case, courts do not need to apply the first-filed rule if, as here, "considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise." *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005). Courts "may exercise their discretion and decline to apply the rule based on 'compelling circumstances.'" *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 630 (W.D. Tex. 2018) (*citing Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)); *see also RTIC Drinkware, LLC v. Yeti Coolers, LLC*, 2016 WL 3999532, at *2 (S.D. Tex. 2016) ("There are no compelling circumstances that weigh against following the 'first-filed rule' in this case.")

To determine what constitutes "compelling circumstances," the Fifth Circuit has endorsed the use of the 28 U.S.C. § 1404(a) convenience factors.[8] *Mission Insurance Co. v. Puritan*

---

[8] The convenience factors are divided into private interest factors and public interest factors. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id*. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *Id.* If the application of the convenience factors favors the second-filed forum, then the second-filed forum is the appropriate forum to litigate the case. *See Mission*, 706 F.2d at 602-603; *Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1040 (Fed. Cir. 1995).

*Fashions Corp.*, 706 F.2d 599, 602-03 (5th Cir. 1983); *see Hart*, 290 F. Supp. 3d at 633. Section 1404(a) provides that a change of venue is necessary when appropriate for the convenience of the parties, as evaluated by the convenience factors. *See* 28 U.S.C. § 1404(a); *Mission*, 706 F.2d at 602-03. But the "factors guiding the [first-to-file] rule's application are ultimately 'equitable in nature,' and lower courts are left an 'ample degree of discretion.'" *Hart*, 290 F. Supp. 3d at 630 (*citing Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183-84 (1952)).

Despite DynaEnergetics' assertions that "the court initially seized of a controversy should be the one to decide whether it will try the case," Dkt. 23 at pp. 12, 23, this Court need not leave the determination to the WDTX court. DynaEnergetics relies upon and cites to Fifth Circuit law, but the "question of whether to decline jurisdiction over a declaratory judgment action under the first-to-file rule is governed by Federal Circuit law." *In re VoIP-PAL.com, Inc.*, 845 Fed. Appx. 940, 942 (Fed. Cir. Feb. 19, 2021) (citing *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005)). And Federal Circuit law allows the second-in-time court to decide whether it will try the case. *Id.* ("Our precedent on this issue makes clear that the [first-to-file] rule is not absolute . . ."). In *VoIP-Pal*, the Federal Circuit denied patentee's mandamus petition to overturn the second-filed district court's refusal to decline jurisdiction over a later file declaratory judgement action because an exception to the first-to-file rule was warranted based on fairness and efficiency grounds. *Id.* Specifically, the patentee had sued the accused infringers in the WDTX, and the accused infringers followed up by filing a series of declaratory judgment actions in the Northern District of California ("NDCA"). *Id.* at 941-42. As DynaEnergetics has done here, the patentee moved the NDCA to decline jurisdiction over the cases, based on the first-to-file rule. *Id.* at 942. The NDCA determined that an exception to the first-to-file rule was warranted and denied

the motion. The patentee appealed, but the Federal Circuit affirmed the NDCA's decision to try the case. *Id.* at 942-43.

## VI.  ARGUMENT

Regardless of which case is the first-filed case, compelling circumstances require adjudication of this action in the Southern District of Texas.  The private interest factors (the ease of access of sources of proof, the availability of compulsory process, the cost of attendance for willing witnesses, and judicial economy) overwhelmingly weigh in favor of this District. Specifically, (1) all sources of proof are either more available or equally available in the SDTX relative to the WDTX; (2) compulsory process is available for at least ***fourteen*** likely third-party witnesses in the SDTX compared to ***none*** in the WDTX; (3) the cost of attendance favors the SDTX for ***eight*** likely willing witnesses while favoring the WDTX for only four possible witnesses; and (4) two other cases filed by DynaEnergetics asserting infringement of the '697 Patent are pending before this Court, with a third related case pending in the Galveston division.

Likewise, the public interest factors either favor the SDTX or are neutral.  Specifically, (1) court congestion favors denial, because the time to trial for this case (along with the *Nexus* case) will likely be faster than it would be in the WDTX; and (2) the SDTX's localized interest heavily outweighs the limited interest that the WDTX has in this case.  In total, the SDTX is the preferable venue for the vast majority of potential witnesses, and six of the eight factors favor the SDTX, while the remaining two factors are neutral.

## F.    All Private Interest Factors Favor Denial of DynaEnergetics' Motion

### 1.    The Ease of Access to Sources of Proof Weighs Heavily in Favor of Denial

The Federal Circuit has explained that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the

defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

Here, documents from both parties will be found in the SDTX. As to NexTier—the focus of this inquiry as the accused infringer—its Houston headquarters is the location of technical and engineering documents that disclose the designs of the GameChanger and other accused products. Ex. G at ¶¶ 5, 8; *see supra* at § B. Documents that reflect NexTier's business activities relating to the accused products are also in Houston, such as sales documents and financial records. Ex. G at ¶¶ 8, 18, 19. Any relevant documents that are in the WDTX are duplicative of documents maintained at the Houston headquarters. *Id.* at ¶ 22. Similarly, the relevant documents in DynaEnergetics' possession are located both in Houston and Blum Texas. Ex. L (DynaEnergetics' Initial Disclosures) at p. 7.

Likewise, the most relevant third-party documents are in the SDTX. None of the engineering and technical documents for the accused G&H and SWM products are in the WDTX. Specifically, G&H is headquartered in in Houston; it operates out of Houston; and all potentially relevant documents related to the G&H components-at-issue are in Houston. *See* Ex. I at 8. SWM is likely irrelevant in this case, as explained above in § II(D), but to the extent it becomes relevant, SWM is headquartered in Pampa, Texas, in the Northern District of Texas, and as a result its documents are in the NDTX. *See* Ex. J (SWM's Website); *see also* Ex. K at ¶ 3.

Furthermore, as discussed above, DynaEnergetics has disclosed seven companies as having knowledge of the "Non-obviousness of the '697 Patent." *See* § II(E)*, supra.* All seven are based in the SDTX and therefore have relevant documents in the SDTX. Ex. M. Moreover, as discussed

above, Schlumberger[9] (along with the associated inventors of the Schlumberger prior art) is a source of relevant documents. Schlumberger and a majority of those inventors are based out of Houston, and so these documents are located in Houston. *See* Ex. M; Ex. P; Ex. 1 at ¶ 18.

In short, the relevant documents in the parties' possession are in the SDTX, and any relevant documents in the possession of third parties are either in the SDTX or are otherwise outside both the SDTX and the WDTX. As a result, this factor weighs heavily in favor of the SDTX.

## 2. The Availability of Compulsory Process to Secure Attendance of Witnesses Strongly Favors Denial

The overwhelming majority of likely third-party witnesses reside or are employed in the SDTX. As a result, this factor weighs heavily in favor of the SDTX. *See GeoTag*, *Inc. v. Starbucks Corp.*, 2013 WL 890484, at *3 (E.D. Tex. Jan. 14, 2013) (A forum "is heavily favored when the majority of the non-party witnesses reside" there.); *see also 10Tales, Inc. v. TikTok Inc.*, No. 6:20-CV-00810-ADA, 2021 WL 2043978, at *3 (W.D. Tex. May 21, 2021) ("This factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue.") (citing *In re Apple, Inc.*, 581 F.App'x 886, 889 (Fed. Cir. 2014)).

First, DynaEnergetics' infringement allegations implicate witnesses affiliated with third-parties G&H and SWM. These witnesses are either in the Houston area or are located outside both the SDTX and WDTX. Specifically, G&H is based out of Houston. Ex. Q ¶¶ 6-9. The three G&H witnesses with knowledge of the Accused G&H Product (John Kaiser, Ben Knight, and Ryan Ward, *id.*at ¶¶ 2, 17-19) are unwilling to attend trial in this case unless subpoenaed to testify. Ex.

---

[9] On August 9, 2021, NexTier served a subpoena on Schlumberger for prior art documents in this case.

R at ¶ 6; Ex. S at ¶ 6; Ex. T at ¶ 6. All three live and work in the Houston area. Ex. R at ¶ 5; Ex. S at ¶ 5; Ex. T at ¶ 5; Ex. Q at ¶¶ 2, 17-19. As a result, compulsory process is not available to secure the attendance of these G&H witnesses in the WDTX, and their location weighs heavily in favor of denial. *In re Hulu, LLC*, 2021 WL 3278194, at n.2 (Fed. Cir., 2021) ("the compulsory process factor is more about the convenience of the litigating parties in making their case rather than the convenience of the unwilling witnesses compelled to testify.").[10]

Meanwhile, SWM is headquartered in Pampa, Texas, in the Northern District of Texas, more than 100 miles from either Waco or Houston. Ex. J. Specifically, SWM's headquarters in Pampa is located over 400 miles (or over 6 hours by car) from Waco, Ex. U, and the most likely SWM witness, Dawna Mauldin, is unwilling to attend trial in this case unless subpoenaed to testify. Ex. V (Declaration of Dawna Mauldin) at ¶ 6. Whether commanded to attend trial in Waco or in Houston, either would be equally inconvenient, *id.* at ¶ 8, and Ms. Mauldin would incur substantial expenses due to the distance, need for overnight accommodation, and time away from home and work. *See 10Tales*, 2021 WL 2043978, at *4 (discounting witnesses that "will be inconvenienced by extensive travel regardless of the forum"). As a result, the location of the SWM witness is neutral for this factor.

Second, as discussed above, all seven of the companies that DynaEnergetics has identified as having knowledge of the prior art are based in the SDTX. *See* Ex. M; *see also* § E, *supra*. As a result, their relevant witnesses will be in the SDTX and subject to a Houston court's subpoena

---

[10] While the convenience of the unwilling witnesses is less important than the availability of compulsory process to secure their attendance, NexTier notes that if commanded to attend trial in Waco, all three G&H witnesses would incur substantial expenses—due to the distance, need for overnight accommodation, and time away from home and work—that would not be required if commanded to attend trial in Houston. Ex. R at ¶¶ 7-8; Ex. S at ¶¶ 7-8; Ex. T at ¶¶ 7-8; *see also Auto–Dril, Inc. v. National Oilwell Varco, L.P.*, 2016 WL 6909479, at *8 (W.D. Tex. 2016) (holding witnesses would incur a substantial expense if required to travel from Houston to Waco).

power.[11] Moreover, seven of the ten prior art witnesses that NexTier has identified at Schlumberger reside in the SDTX; none of them reside in the WDTX. Ex. 1 at ¶ 9. These witnesses should weigh heavily in favor of laying venue in the SDTX. *Personal Audio, LLC v. Google LLC*, No. 17-cv-1751 (D. Del. Mar. 19, 2019). ("it seems correct to the Court . . . that the witnesses relating to system prior art are 'extremely critical to [Defendant]'s [invalidity] case.'"); *see also In re Hulu, LLC*, 2021 WL 3278194, at *3 (C.A.Fed. (Tex.), 2021) (emphasizing the importance of prior art witnesses in assessing the unwilling witnesses factor).

Third, several former NexTier employees are knowledgeable about the research, design, and development of the GameChanger and are likely to serve as witnesses. Ex. G at ¶ 17. These include Steve DeLozier, Bulent Finci, George Innes, and Jaime Pedraza. *Id*. All of these former employees still live and work in the Houston area. *See* Ex. W. As such, compulsory process is available to secure the attendance of all four of these witnesses before this Court, but it would not be available if this case were transferred to the WDTX.

Additionally, this factor is neutral with respect to the inventors listed on the '697 Patent who are no longer employed by DynaEnergetics[12]—Frank Preiss, Eric Mulhern, and David Parks—because they are located outside the United States. Ex. X at ¶ 15; Ex. A (the '697 Patent) at p. 1; Ex. H at pp. 40, 46, 52.

Given the nature of a patent trial, the uncertainty of when witnesses will testify, and the distance from the Houston area to the Waco area, the attendance of the Houston-based witnesses

---

[11] The Federal Circuit has noted that when there is no indication that the non-party witness is willing, there is likely a presumption in the Fifth Circuit that a non-party witness is unwilling to attend trial *In re Hulu, LLC*, 2021 WL 3278194, at *4 (Fed. Cir. 2021).

[12] Ex. X (Declaration of Ian Grieves, president of DynaEnergetics US, Inc. and the DynaEnergetics Division of DMC Global) at ¶ 15 (Frank Preiss no longer works for DynaEnergetics); Ex. H (LinkedIn pages of Frank Preiss, Eric Mulhern, and David Parks).

at trial in the WDTX would be cost prohibitive. *See Auto–Dril, Inc. v. National Oilwell Varco, L.P.*, 2016 WL 6909479, at *8 (W.D. Tex. 2016) (holding witnesses would incur a substantial expense if required to travel from Houston, TX to Waco, TX). As a result of these witnesses' locations, at least **fourteen** witnesses are within the compulsory subpoena power of this Court, whereas none are within the compulsory subpoena power of the WDTX. Once witnesses are identified at the seven SDTX companies that DynaEnergetics named as having knowledge of the prior art, it is likely that this count will swing even further in favor of keeping the case in this Court. This factor strongly favors denial.

### 3.    The Cost of Attendance for Willing Witnesses Heavily Favors Denial

The convenience of witnesses is the single most important factor in the transfer analysis. *Genentech*, 566 F.3d at 1342. A "court must consider the factor of inconvenience to all witnesses." *In re Hulu, LLC*, 2021 WL 3278194, at *5 (Fed. Cir. 2021) (quoting *SITO Mobile R&D IP v. Hulu, LLC*, 2021 WL 1166772, at *6 (W.D.Tex., 2021) and determining that the district court should not have discounted the inconvenience of party witnesses relative to third-party witnesses). As detailed above, NexTier's current employees with the most knowledge relevant to this case, Kevin Zanca, Ron Lutz and Ashwin Gupte, as well as all potentially relevant NexTier executives, are in Houston. Ex. G at ¶¶ 10, 16.

Similarly, many of DynaEnergetics' own relevant employees, including the five witnesses identified above in § II(C), are located either in Houston or abroad. To the extent there are witnesses who will have to travel internationally, such as Liam McNelis and Thilo Scharf (the inventors of the '697 Patent who are still employed by DynaEnergetics)[13], appearing "in Waco after traveling from either Dallas or Houston would produce additional travel time and difficulty

---

[13] *See* Ex. A; Ex. H; Ex. X.

whereas traveling to and appearing in Houston would be significantly easier." *DynaEnergetics Europe GmbH v. Hunting Titan Inc.*, No. 6:20-cv-00069-ADA, 2020 WL 3259807, at *7 (W.D. Tex. June 16, 2020); *See also 10Tales*, 2021 WL 2043978, at *4 (discounting witnesses who "will be inconvenienced by extensive travel regardless of the forum").

Although DynaEnergetics' Initial Disclosures list five of its employees located in the WDTX as "Persons Likely to Have Discoverable Information," Ex. L at pp. 4–5, these are less certain. One of the five, Gernot Burmeister, also works out of the Houston headquarters and therefore is neutral with respect to this factor. Ex. X (DynaEnergetics' Colorado Declaration) at ¶ 16. The others are manufacturing and sales employees at DynaEnergetics' Blum facility. Ex. L at 4–5. The Blum employees are listed as having duplicative generic information about "sales and marketing," "damages", "willful infringement," and "manufacture and sales" of DynaEnergetics' products, and "Non-obviousness." *Id.* It's unlikely that all of these witnesses will be called—none of them are listed as having knowledge about research, design, and development of the alleged invention, and their information (sales and manufacturing) is cumulative.

Added up, there are at least *eight* likely witnesses for whom trial in the SDTX is more convenient. In contrast, NexTier is aware of only four potential witnesses for which trial in Waco will be more convenient than a trial in Houston, and it is unlikely that all four will be called to testify. Accordingly, this factor weighs in favor of denial.

### 4.     Judicial Economy Weighs in Favor of Denial

"[M]ultiple suits involving the same or similar issues may create practical problems that will weigh in favor of or against transfer." *Uniloc USA v Box, Inc.*, No. 17-754, 2018 WL 2729202, at *4 (W.D. Tex. June 6, 2018) (citations omitted). Thus, considerations of judicial economy are important "where there is co-pending litigation before the trial court involving the same patent and underlying technology." *Id.*

Importantly, DynaEnergetics already filed cases in the SDTX against two Houston-based defendants for infringement of the '697 Patent, and one of those—the *Nexus* case—is still being actively litigated before this Court. Keeping this case before this Court as well will require little new work beyond the work that will already need to be done in the *Nexus* case. *See In re Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011) (finding consolidation of cases relevant to this factor) (non-precedential); *see also In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) (finding it proper to consider "co-pending litigation before the district court involving the same patent and underlying technology" in a transfer analysis).

In fact, for the related cases pending in the WDTX, DynaEnergetics' own complaints identify those defendants as being based in either the SDTX or the NDTX—where DynaEnergetics has ***already brought multiple cases*** involving the exact same patent-at-issue. *See generally* Ex. B and related complaints. In other words, if DynaEnergetics had any concern for judicial economy, it could have filed each of its WDTX cases in either the SDTX or NDTX for coordination with other pending cases involving the same technology and patent. As a result, this factor should favor denial, or at the very least, be neutral.

## G.     The Public Interest Factors Also Favor Denial

### 1.     Administrative Difficulties Related to Court Congestion Favors Denial

Court congestion is measured by "whether a trial may be speedier in another court because of a less crowded docket." *Genentech*, 566 F.3d at 1347. In analyzing court congestion, "courts commonly consider the Federal Judicial caseload statistics." *USPC Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *5 (N.D. Tex. Mar. 25, 2011).

The WDTX and SDTX have a similar number of filings per judgeship.[14] For patent cases, a limited sample suggests that time to trial in the WDTX is roughly two years, compared to three years in the SDTX. *See* Ex. Z. But the significance of this data is questionable, because both districts have tried fewer than eight patent cases since September 2018. *Id.*

Given the Federal Circuit's admonition that "this factor appears to be the most speculative . . . and case-disposition statistics may not always tell the whole story[,]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009), it is more instructive to compare the schedules between the WDTX case and the related SDTX cases. As discussed above, the *Nexus* case is set for trial on December 2022, which is earlier than the January 2023 proposed trial date in the WDTX. Ex. E at p. 3; Ex. F (WDTX Proposed Scheduling Order) at p. 6.[15] Keeping this case before this Court rather than the WDTX will likely expedite the trial date. As a result, this factor favors denial.

### 2.    The SDTX's Localized Interest Weighs Heavily in Favor of Denial

A forum has a localized interest in resolving a dispute when "defendants are headquartered, develop the accused products, and employ a large number of people in the transferee venue." *Uniloc*, 2018 WL 2729202 at *4 (quoting *Wireless Recognition Techs. LLC v. A9.com, Inc.*, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012). This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the "significant connections between a particular venue and the events *that gave rise to a suit*."  *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)).

---

[14] In 2020, the WDTX had 947 filings per judgeship, compared with 823 filings per judgeship in the SDTX.

[15] Ex. F (the WDTX Proposed Scheduling Order) lists "Jan. 3, 2022" as the Jury Selection/Trial date, but this is a typo. Based on the other dates, it is intended to read "Jan. 3, 2023."

Events that give rise to a suit include, "specifically, the development of the accused products" (i.e., where the "accused products were designed, developed, and tested.")  *Id.* (quoting *In re HP Inc.*, 826 Fed. Appx. 899, 901, 903–04 (Fed. Cir. 2020)). And as the Fifth Circuit has explained, "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)) (internal alteration omitted).

The SDTX has clear connections to this case, while the WDTX does not. As discussed above, Houston is the location of NexTier's headquarters, and is where NexTier researched, designed, developed and manufactured its GameChanger product. Ex. G at ¶¶ 6, 8, and 13. Houston is also the location of G&H's headquarters, where the G&H components-at-issue were manufactured. *Id.* at 5, 6. It follows that the infringement allegations "call into question the work and reputation" of residents in the SDTX, not the WDTX. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

These facts clearly favor resolution before this Court. Although DynaEnergetics has recently opened a facility in the Blum, Texas, "the headquarters remain in the SDTX and DynaEnergetics filed suit in the SDTX twice after opening the flagship facility." *DynaEnergetics Europe GmbH v. Hunting Titan Inc.*, No. 6:20-cv-00069-ADA, 2020 WL 3259807, at *5 (W.D. Tex. June 16, 2020). And as the WDTX has routinely held, the "district where a party has its principal place of business typically has a stronger local interest in the adjudication of the case." *XY, LLC v. Trans Ova Genetics, LC*, 2017 WL 5505340, at *9 (W.D. Tex. Apr. 5, 2017) (Manske, Mag. J.). And because the WDTX has no meaningful connection to the case, the local interest factor heavily favors the SDTX. *See In re Nintendo*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("The record shows that [the defendant] is incorporated in Washington and has its principal place of

business in the Western District of Washington. No parties, witnesses, or evidence have any material connection to the venue chosen by the plaintiff. Therefore, the record leaves only the conclusion that the local interest in Washington clearly favors transfer.").

### 3. The Remaining Public Interest Factors are Neutral

The remaining public interest factors—conflicts of law and the courts' familiarity with patent law—are neutral.

## H. Staying This Case Would Risk Major Efficiency Consequences With No Corresponding Benefit.

DynaEnergetics' request to have this case stayed while the WDTX decides the venue issue is misguided under these circumstances. As noted in Section V ("Legal Authority"), Dyna Energetics' is mistaken in its argument that this Court must defer to the WDTX on the first-to-file issue. Even if stayed, this Court would still have the *Nexus* case before it, where it will still have to resolve issues that are substantially identical to the issues in this case. *See* Dkt. 22. For example, the upcoming deadlines in this case—primarily related to claim construction and the possible selection of a court-appointed special master—are tasks which focus on the '697 Patent rather than on the accused infringers. These deadlines are the same in the *Nexus* case. *Id*; *see also* Ex. E (the *Nexus* case schedule). Whether or not the Court stays this case, the '697 Patent will need to be construed and a special master may need to be selected. But if the Court does stay this case, deferring to the WDTX court, then those deadlines will begin to slip with regard to NexTier. This comes at a significant cost, because if the WDTX ends up granting NexTier's pending Motion to Transfer, then the stay will need to be lifted and this case will be out-of-step with the *Nexus* action. Moreover, NexTier will be prejudiced by the fact that it will not have participated in the Markman process and hearing in the *Nexus* case. The Court (and the Parties) will be forced to re-hash earlier work. Given that there is no corresponding benefit for the situation where the WDTX denies

21

NexTier's pending Motion to Transfer—little to no work will have been saved—this risk is not justifiable.

I.     **This Case is not Anticipatory, and Dismissal is not Warranted**

DynaEnergetics spends the majority of its brief explaining how it filed first, and then does an abrupt about-face, arguing NexTier's first-filed case should be dismissed under an exception to the first-to-file rule as an "impermissible anticipatory case" and incorrectly portraying NexTier's Complaint as a premature first move made during settlement negotiations. But NexTier's case, filed almost four months after DynaEnergetics filed its case against NexTier Oilfield Solutions Inc., cannot "anticipate." DynaEnergetics is implicitly arguing that NexTier may actually be the first filer, given that DynaEnergetics sued the wrong party in WDTX and that the Court should ignore DynaEnergetics' arguments that the first-to-file rule dictates this Court keep this case, and again decline to evaluate the merits.

To the contrary, this Court should first determine the most convenient venue for this matter—and the cases that DynaEnergetics cites support this proposition. *See Epic Tech, LLC v. Arno Res., LLC*, 2020 WL 5351078 (W.D. Tex. 2020); *Bedrock Logistics, LLC v. Braintree Labs., Inc.*, 2017 WL 1547013 (N.D. Tex. 2017); *Frank's Tong Serv., Inc. v. Grey Wolf Drilling Co., L.P.*, 2007 WL 5186798 (S.D. Tex. 2007)). In *Bedrock*, *Franks*, and *Paragon*, the courts *first* evaluated the §1404 factors as to whether to transfer to a district with a second-filed case (the first two said "yes" and the last found the factors all "neutral"), and *only then* declined to keep the first-filed matter in their district. Even the court in *Epic Tech,* which did not explicitly analyze each §1404 factor, made sure to note that the forums were equal in that each party was headquartered in the competing districts before declining to keep the first-filed case. *See* n.2–n.3. Similarly, this Court should evaluate the §1404 factors and the Court will find, as explained above, that the case should remain here. In other words, this isn't a situation where the Court is assessing a first-filed

case to determine whether it should be transferred to another forum due to it being "anticipatory." Rather, the Court can simply make the determination as to whether this is the proper venue under the §1404 factors.

Moreover, the cases that DynaEnergetics cites rest upon the policy that the "Fifth Circuit does not favor races to the courthouse," *Epic Tech* at *7, but this justification is inapplicable here. In each case, the declaratory judgment plaintiff filed suit *during* settlement negotiations or while a settlement offer was *pending*. *Id.* at *6; *Bedrock* at *5; *Frank's* at *3; *Paragon* at *4. In two of these cases, the courts explain their decision to transfer was based on the fact that the declaratory judgment plaintiffs sought extensions to negotiation deadlines in order provide time to win the race to the courthouse. *Epic Tech* at *6; *Paragon* at *5. But in this case settlement negotiations had *ended*, and DynaEnergetics had *already filed* its WDTX complaint months before NexTier filed its complaint in this case.[16] Motion at p. 2; *see also* Dkt. 25 (DynaEnergetics' Answer and Counterclaims) at p. 6 ("[T]his case substantially overlaps with an earlier-filed action in the Western District of Texas"). NexTier did not try to deceivingly take advantage of the first-to-file rule, but was guided by the compelling circumstances in this dispute to file complaint in the most convenient venue to get the dispute moving alongside other closely related cases while it worked to dismiss or transfer the WDTX case.

Finally, DynaEnergetics argues that this case should be dismissed because to do otherwise would encourage forum-shopping. *See* Dkt. 23 at 20-21. But it is DynaEnergetics—not NexTier—

---

[16] DynaEnergetics' counsel takes pains to argue that NexTier "strung DynaEnergetics along for more than six months" by filing multiple motions for an extension to answer the WDTX case with the promise of settlement talks, implying that such talks did not take place. Mot. pp. 3–4. What DynaEnergetics did not tell this Court is that the parties *did* engage in good faith detailed settlement discussions that simply did not result in a settlement.

who is shopping forums.  DynaEnergetics made the tactical decision to sue NexTier in Waco, despite private and public interest factors overwhelmingly favoring Houston, for some unspoken perceived advantage.

## VII.  CONCLUSION

Because this is a dispute among Houston companies with evidence and witnesses located overwhelmingly in Houston, and because all issues in this case will still need to be litigated before this court even if this case is dismissed, stayed, or transferred, the Court should deny DynaEnergetics' Motion.

As shown above, each of the four private interest factors supports keeping this case in the SDTX. The public interest factors also favor denial. Three of these factors are at worst neutral: the administrative difficulties flowing from court congestion, the familiarity of the forum with the law that will govern the case, and the avoidance of unnecessary problems of conflict of laws. However, the remaining factor, the local interest in having localized interests decided at home, strongly weighs in favor of denial as the GameChanger and the G&H and SWM Accused Products are designed, developed, and manufactured in the SDTX. For these reasons, the SDTX is clearly more convenient for the parties.

Dated: August 11, 2021                          Respectfully submitted,

                                                /s/ *Amir H. Alavi*_____
                                                Amir Alavi
                                                State Bar No. 00793239
                                                Southern District Federal ID No. 20910
                                                Demetrios Anaipakos
                                                State Bar No. 00793258
                                                Southern District Federal ID No. 20323
                                                Scott W. Clark
                                                State Bar No. 24007003
                                                Southern District Federal ID No. 25553
                                                Michael McBride
                                                State Bar No. 24065700

24

Southern District Federal ID No. 3554928
Steven Jugle
State Bar No. 24083280
Southern District Federal ID No. 3633066
Joshua Wyde
State Bar No. 24060858
Southern District Federal ID No. 873284
Louis Liao
State Bar No. 24109471
Southern District Federal ID No. 3521938
Colin Phillips
State Bar No. 24105937
Southern District Federal ID No. 3576569
AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI &
   MENSING, P.C.
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101
(713) 655-0062
aalavi@azalaw.com
danaipakos@azalaw.com
sclark@azalaw.com
mmcbride@azalaw.com
sjugle@azalaw.com
jwyde@azalaw.com
lliao@azalaw.com
cphillips@azalaw.com

**ATTORNEYS FOR COUNTERCLAIM
DEFENDANT NEXTIER
COMPLETION SOLUTIONS INC.**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 11, 2021, a true and correct copy of this document has been filed electronically via the Court's CM/ECF filing system and subsequently all counsel in this matter deemed to accept service electronically will be notified via the Court's CM/ECF filing system.

        */s/ Amir H. Alavi*
        Amir Alavi